UMBERG ZIPSER LLP
THOMAS J. UMBERG (SBN 94345)
tumberg@umbergzipser.com
DEAN J. ZIPSER (SBN 94680)
dzipser@umbergzipser.com
CAROLE E. REAGAN (SBN 162674)
creagan@umbergzipser.com
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: (949) 679-0052

BUCHALTER
A Professional Corporation
ROBERT S. MCWHORTER (SBN 226186)
JACQUELINE N. VU (SBN 287011)
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone: (916) 945-5170
Email: rmcwhorter@buchalter.com
      jvu@buchalter.com

Attorneys for Plaintiff,
BANC OF CALIFORNIA,
NATIONAL ASSOCIATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| BANC OF CALIFORNIA, NATIONAL ASSOCIATION, a national banking association,<br><br>Plaintiff,<br><br>vs.<br><br>MARY CAROLE MCDONNELL, an individual; DION NORAVIAN, an individual; MERCHANTS BONDING COMPANY (MUTUAL); NORTHERN TRUST CORPORATION; MELVIN CLARK JR., an individual; and DOES 1through 20, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**(1) INTENTIONAL MISREPRESENTATION/FRAUD;**<br>**(2) CONSPIRACY TO DEFRAUD;**<br>**(3) BREACH OF WRITTEN CONTRACT;**<br>**(4) NEGLIGENT MISREPRESENTATION;**<br>**(5) NEGLIGENCE;**<br>**(6) FALSE BANK ENTRIES;**<br>**(7) VIOLATION OF COMPUTER FRAUD AND ABUSE ACT;**<br>**(8) MONEY HAD AND RECEIVED;**<br>**(9) ACCOUNT STATED;**<br>**(10) OPEN BOOK ACCOUNT; AND**<br>**(11) APPOINTMENT OF RECEIVER**<br><br>**DEMAND FOR JURY TRIAL** |

1
## COMPLAINT

2       Plaintiff, Banc of California, National Association ("BOC") alleges, on

3  personal knowledge as to itself and its own acts, and on information and belief as to

4  all other matters, for its complaint against Mary Carole McDonnell ("McDonnell),

5  Dion Noravian ("Noravian"), Merchants Bonding Company (Mutual)

6  ("Merchants"), Northern Trust Corporation, Melvin Clark, Jr. ("Mel Clark" or

7  "Clark"), and DOES 1 through 20 (collectively, the "Defendants") as follows:

8
## INTRODUCTION

9       1.      This action seeks to recover a loan that Defendants fraudulently

10  procured from BOC.  In December 2017, McDonnell approached BOC to obtain a

11  multi-million loan based on the false representation that McDonnell was an heir of

12  the founders of the McDonnell Douglas Corporation and a beneficiary of the

13  McDonnell Family Irrevocable Trust of 1964 (the "Family Trust"), which would

14  soon be distributing $80 million to her from funds on deposit with Northern Trust

15  Securities, Inc. (a subsidiary of Northern Trust Corporation and collectively,

16  "Northern Trust").  To prop up this facade, McDonnell, through her counsel, sent

17  correspondence to BOC falsely affirming this distribution, and McDonnell provided

18  account statements from Northern Trust showing over $28.6 million on deposit.

19  Relying upon these and other subsequent representations from Defendants, BOC

20  entered into an agreement to loan McDonnell up to $15 million, secured by the

21  $28.6 million on deposit with Northern Trust and subject to a written control

22  agreement among BOC, Northern Trust, and McDonnell (the "Control

23  Agreement").  The Control Agreement was presented to BOC with notarized

24  signatures of McDonnell and Mel Clark, a Senior Vice President and Managing

25  Director of Northern Trust.

26       2.      After McDonnell drew down approximately $14.6 million in loan

27  proceeds, BOC discovered that that it was all a sophisticated fraud.  Northern Trust

28  did not hold $80 million on deposit for the Family Trust or McDonnell, let alone

1   the $28.6 million represented in the account statements and pledged by McDonnell

2   to secure BOC's loan to McDonnell.  BOC also later learned that Noravian, the

3   notary whose stamp appears on the Control Agreement, never actually witnessed

4   Mel Clark sign the Control Agreement.  McDonnell defaulted on the loan and has

5   since failed and refused to re-pay any of the $14.6 million.

6        3.      BOC seeks entry of judgment against Defendants, jointly and

7   severally, to recover the damages caused by their fraudulent, negligent and other

8   misconduct as further alleged herein.

9                        **JURISDICTION AND VENUE**

10       4.      This Court has subject matter jurisdiction over this action pursuant to

11   28 U.S.C. §§ 1331.  Supplemental jurisdiction is based on 28 U.S.C. § 1367.

12       5.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and

13   (b)(3).  Venue is proper in this Division pursuant to General Order 16-05 because

14   BOC resides in the Southern Division.

15                              **PARTIES**

16       6.      BOC is a national banking association whose chief executive office is

17   located at 3 MacArthur Place, Santa Ana, California 92707.

18       7.      McDonnell is an individual who, at all relevant times, resided in La

19   Cañada Flintridge, California.

20       8.      Noravian is an individual, who, at all relevant times, resided in

21   Tujunga, California.  Noravian is a licensed notary in California.

22       9.      Merchants is a surety underwriter formed in Iowa that maintains its

23   principal place of business in West Des Moines, Iowa.  Merchants operates  an

24   office and conducts business in this District.  On or about October 31, 2017,

25   Merchants executed a Notary Public Bond for and on behalf of Noravian as notary

26   public in the sum of $15,000.

27       10.     Northern Trust Corporation is a financial services company

28   headquartered in Illinois and doing business in this District.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{157800.8}                                    2

11.    Mel Clark is an individual who, BOC alleges on information and belief, resides in Pasadena, California.

12.    BOC is unaware of the true names, capacities, or basis for liabilities of defendants DOES 1 through 20, inclusive, and therefore sues said defendants by their fictitious names.  BOC will amend this Complaint to allege their true names, capacities, or basis for liability when the same have been ascertained.  BOC is informed and believes and on that basis alleges that defendants DOES 1 through 20, inclusive, and each of them, are in some manner liable to BOC, or claim some right, title, or interest in the personal property collateral as described below that is junior and inferior to that of BOC, or both.

13.    At all times relevant to this action, each defendant, including those fictitiously named, was the agent, servant, employee, partner, joint venturer, or surety of the other defendants and was acting within the scope of said agency, employment, partnership, venture, or suretyship, with the knowledge and consent or ratification of each of the other defendants in doing the things alleged in this Complaint.

## FACTUAL ALLEGATIONS

### The Loan Application

14.    In mid-December 2017, McDonnell, her counsel Barry K. Rothman, the sole officer, director, and shareholder of the Law Offices of Barry K. Rothman ("Rothman" or "Rothman PC"), and BOC representatives met at the office of Rothman PC.  During this meeting, McDonnell represented that her family made their money as the founders of the McDonnell Douglas Corporation, and that she was an heir to the Family Trust.  She further represented that she would receive a cash distribution of $80 million from the Family Trust by December 31, 2018, but needed a "bridge loan" until that distribution was made.  McDonnell requested that BOC provide her with a bridge loan that she would repay once she received distributions from the Family Trust.

15.     During this meeting, BOC was told that the bridge loan to McDonnell could be secured by funds held at Northern Trust and owed to McDonnell by the Family Trust.

16.     On December 21, 2017, McDonnell submitted a Personal Financial Statement and Loan Application (the "Loan Application") to BOC, a true and correct copy of which is attached as **Exhibit 1** to this Complaint and incorporated by reference.[1]  McDonnell requested in the Loan Application that BOC provide her with a $10 million revolving line of credit to address her "cash flow" needs "until [Family] [T]rust distributes."  McDonnell represented that she was entitled to a distribution of $80 million from the Family Trust, and that the assets of the Family Trust could collateralize BOC's loan to her.

17.     In her Loan Application, McDonnell represented that: (i) she never defaulted on a loan beyond the applicable cure period in any obligation related to either repayment of debt or the collateral securing such debt; (ii) she was never delinquent in the payment of any personal income taxes or real property taxes, (iii) she was never a party to any material claims or lawsuits, or had a material judgment against her, (iv) she has never had a property foreclosed upon or had a debt forgiven.

18.     In the Loan Application, McDonnell certified that she made no misrepresentations therein, that all information therein was true and correct, and that she did not omit any important information.

19.     On December 26, 2017, Rothman sent a letter to BOC enclosing a proposed "Notification and Control Agreement" for BOC's review that identified The Northern Trust Company, through its agent Mel Clark, as the custodian for Northern Trust Account No: XXX-XX7332 (the "Account").  A true and correct copy of this letter is attached as **Exhibit 2** to this Complaint and incorporated by

---

[1] Information covered by Fed. R. Civ. Proc. 5.2 and Local Rule 5.2 has been redacted from this exhibit, as well as other exhibits.

1  reference.  On behalf of McDonnell, Rothman represented in his letter:

2         It is contemplated that this document, once approved by

3         you, will be executed by Northern Trust and then returned

4         to me, as I hold all the original signatures.

5         When the loan transacts with you, we will ensure the fact

6         that the enclosed Agreement is delivered to Northern

7         Trust with a written confirmation that it has been

8         delivered.

9      20.    On January 3, 2018, McDonnell emailed BOC a Northern Trust

10  statement for the Account in the name of the Family Trust that reflected a balance

11  of $28,624,549.20 for the period of November 1, 2017 to November 30, 2017.

12  Upon information and belief, McDonnell obtained that statement, or one from

13  which it was created, from Clark and Northern Trust.  A true and correct copy of

14  this account statement is attached as **Exhibit 3** to this Complaint and incorporated

15  by reference.

16      21.    In January 2018, McDonnell, both individually and through her

17  counsel, sent BOC multiple letters representing that the Family Trust held $80

18  million at Northern Trust that would be distributed to her by December 31, 2018,

19  including multiple letters bearing Clark's signature on behalf of Northern Trust

20  affirming the existence of the Account at Northern Trust.

21      22.    One of these letters, dated January 31, 2018, represented that the

22  balance in the Account, totaling $28,624,549.20, would be frozen and held in favor

23  of BOC pursuant to a control agreement between BOC and Northern Trust.  A true

24  and correct copy of this letter is attached as **Exhibit 4** to this Complaint and

25  incorporated by reference.   The letter stated:

26         Please be advised that Mary Carole McDonnell's balance

27         in her Northern Trust account, which will be under the

28         Bank control agreement with Banc of California, is

$28,624,549.20.

The LOC with Banc of California is for $15M but the entire account will be frozen, effective today. There will be no deposits or withdrawals into this account until the bank control agreement is lifted. The term of the LOC is for one year, unless closed earlier. If any questions, please contact Ms. McDonnell or Barry Rothman, Esq. Northern Trust does not communicate with third parties unless directed by Ms. McDonnell or Barry Rothman.

### The Loan Documents

23.     On or about February 1, 2018, McDonnell delivered the following loan documents to BOC (collectively, the "Loan Documents"):

(a)     a Promissory Note, dated February 1, 2018, in the principal amount of $15,000,000 (the "Note"), executed by McDonnell;

(b)     a Pledge Agreement, dated February 1, 2018 (the "Pledge Agreement"), executed by McDonnell;

(c)     the Control Agreement, dated January 31, 2018, with notarized signatures of Clark on behalf of Northern Trust and McDonnell; and

(d)     a Disbursement Request and Authorization, dated February 1, 2018 (the "Disbursement Request"), executed by McDonnell.

True and correct copies of the Note, the Pledge Agreement, the Control Agreement, the Disbursement Request are attached as **Exhibits 5, 6, 7, and 8** to this Complaint and incorporated by reference.

24.     Under the Note, McDonnell, as maker, agreed to pay the principal amount of $15,000,000 to BOC, plus all accrued, unpaid interest by February 1, 2019. *See* Exhibit 5, p. 1.

25.     Under the Pledge Agreement, McDonnell granted BOC a security interest in the Account to secure repayment of the Note. *See* Exhibit 6, p. 1. In the

1   Pledge Agreement, McDonnell represented that she was "the lawful owner" of the
2   Account at Northern Trust "with a minimum balance of $28,624,549.20," and that
3   she possessed "full right, power and authority" to pledge the Account as collateral.
4   *See* Exhibit 6, pp. 1-2.

5        26.    Under the Control Agreement, McDonnell represented that she owned
6   the Account in her own name and granted BOC control over the Account to perfect
7   BOC's security interest under the Pledge Agreement. *See* Exhibit 7, p. 1.
8   Specifically, the Control Agreement provided that Northern Trust would accept all
9   instructions from BOC with respect to the disposition, transfer or withdrawal of
10  funds from the Account. *See* Exhibit 7, § 3, p. 1.

11       27.    The Control Agreement further provided, among other things, that
12  Northern Trust had an established bank account in McDonnell's name, with the
13  same account number as on the statement provided by McDonnell as alleged above,
14  and that BOC would be the sole secured creditor for that account.

15       28.    Noravian notarized Mel Clark's signature, on behalf of Northern Trust,
16  on the Control Agreement, thereby representing that he witnessed Mel Clark sign
17  the Control Agreement.

18       29.    Under the Disbursement Request, McDonnell represented that the
19  primary purpose of the loan was for "Personal, Family, or Household Purposes, or
20  Personal Investment." *See* Exhibit 8, p. 1.

21       30.    On or about January 31, 2018, BOC called Northern Trust directly to
22  verify the Account as cash-secured collateral. Northern Trust did not return the
23  phone call. Rather, on February 1, 2018, McDonnell emailed BOC another letter
24  signed by Clark on behalf of Northern Trust, reiterating that, "the account is cash
25  secured at all times. The block is already on the account. If Banc of California
26  calls the loan at any time in the event of a default, we will immediately tender
27  funds." A true and correct copy of this letter is attached as **Exhibit 9** to this
28  Complaint and incorporated by reference.

31.     One of the conditions of a loan from BOC to McDonnell was that none of the proceeds were to be used in connection with McDonnell's company, Bellum Entertainment, LLC ("Bellum"), a California limited liability company owned by McDonnell that produces television shows.  On February 2, 2018,  Rothman PC, through Rothman, emailed BOC and represented that "[t]he funds [from the loan] will not be used for Bellum."

32.     From February 2, 2018 to March 14, 2018, McDonnell drew down a total of $14,660,255.09 from BOC pursuant to the Loan Documents.

### False Representations

33.     The oral and written representations enumerated above were false because, among other things:

(a)     upon information and belief, McDonnell was not related to or an heir of the founders of the McDonnell Douglas Corporation;

(b)     upon information and belief, McDonnell is and was not entitled to receive a distribution of $80 million from the Family Trust;

(c)     McDonnell, the Mary Carole McDonnell Trust ("Mary Trust"), and The Family Trust do not, and did not, have $80 million on deposit with Northern Trust;

(d)     the Account does not, and did not, have $28,624,549.20 on deposit on or after December 2017 (upon information and belief, the Account belonged to a third party named "McDonald," who is not related to McDonnell, the Mary Trust or the Family Trust, and was closed in December 2017);

(e)     McDonnell, the Mary Trust or the Family Trust, are not, and have never been, the lawful owner of, or had any interest in, the Account;

(f)     McDonnell does not possess, and has never possessed, the "full right, power and authority" to pledge the Account as collateral;

1        (g)     upon information and belief, the notary Noravian did not

2    witness Mel Clark sign the Control Agreement;

3        (h)     upon information and belief, the proceeds of BOC's loan to

4    McDonnell were used for Bellum; and

5        (i)     upon information and belief, McDonnell was insolvent, failed to

6    pay her debts in the ordinary course of business, had defaulted and become

7    delinquent on loans beyond any applicable cure period, and had two real

8    properties in foreclosure.

9        34.    Upon information and belief, the oral and written representations

10   enumerated above were made knowing they were false, and with the intent to

11   induce BOC to enter into the Loan Documents and to loan \$14,660,255.09 to

12   McDonnell.

13       35.    BOC justifiably, reasonably, and detrimentally relied upon the oral and

14   written representations enumerated above by entering into the Loan Documents and

15   by loaning \$14,660,255.09 to McDonnell.

16       36.    Had BOC known that these oral and written representations were false

17   and misleading, BOC would not have entered into the Loan Documents or loaned

18   \$14,660,255.09 to McDonnell pursuant to the Loan Documents.

19       37.    On March 14, 2018, BOC delivered a written demand for payment (the

20   "Demand") to McDonnell, a true and correct copy of which is attached as

21   **Exhibit 10** to this Complaint and is incorporated by reference.  In the Demand,

22   BOC notified McDonnell that the total outstanding balance of the Note was

23   \$14,660,255.09 (the "Outstanding Balance"), as of March 14, 2018, and that it

24   would apply \$672,201.37 held in an interest reserve account towards the

25   Outstanding Balance, resulting in the total amount due under the Note to equal

26   \$13,988,053.72 (the "Total Amount Due"), exclusive of attorneys' fees and costs,

27   and other charges owed under the Note. *See* Exhibit 10, p. 3.  In the Demand, BOC

28   requested that McDonnell pay the Total Amount Due on March 15, 2018 by 12:00

p.m. (PT).  McDonnell has failed to pay BOC the Total Amount Due, or any amount.

## FIRST CLAIM FOR RELIEF

### (Against All Defendants for Intentional Misrepresentation/Fraud)

38.     BOC incorporates by reference paragraphs 1 through 37, of this Complaint as though fully set forth in this claim for relief.

39.     As a direct and proximate cause of Defendants' false representations, BOC suffered, and continues to suffer, damages totaling at least $13,988,053.72, plus interest, attorneys' fees and costs.  The full nature and extent of these damages, and of Defendants' fraudulent acts, are presently unknown.

40.     Upon information and belief, Defendants acted willfully, maliciously, oppressively and with full knowledge of the adverse effect of their actions on BOC, and with willful and deliberate disregard to the consequences to BOC.  As a direct result of the fraudulent, willful and malicious conduct of Defendants, BOC is entitled to exemplary and punitive damages against them in an amount to be determined as appropriate by the trier of fact.

## SECOND CLAIM FOR RELIEF

### (Against Defendants and DOES 1 through 10 for Conspiracy to Defraud)

41.     BOC incorporates by reference paragraphs 1 through 37 of this Complaint as though fully set forth in this claim for relief.

42.     Defendants and DOES 1 through 10 engaged in a conspiracy to defraud BOC as described above, and these defendants reached implicit or explicit agreements with each other to aid in defrauding BOC.  In furtherance of their agreements, these defendants committed the fraud described herein.

43.     As a direct and proximate result of the fraudulent representations of Defendants, BOC suffered, and continues to suffer, damages totaling at least $13,988,053.72, plus interest, attorneys' fees and costs.  The full nature and extent of these damages, and of these defendants' fraudulent acts, are presently unknown.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{157800.8}

44.     On information and belief, BOC alleges that these defendants, and each of them, in doing the things herein alleged, acted willfully, maliciously, oppressively and with full knowledge of the adverse effect of their actions on BOC, and with willful and deliberate disregard to the consequences to BOC.

## THIRD CLAIM FOR RELIEF

### (Against Mel Clark for False Bank Entries

### [18 U.S.C. Section 1005, 12 U.S.C. Section 503])

45.     BOC incorporates by reference paragraphs 1 through 37 of this Complaint as though fully set forth in this claim for relief.

46.     BOC alleges on information and belief that Clark was at all times relevant herein, an officer and managing director of Northern Trust.  BOC further alleges on information and belief that Northern Trust is a member bank of the Federal Reserve System, as defined in 12 U.S.C. sections 221 and 503, and 18 U.S.C. section 1005.

47.     BOC alleges on information and belief that Clark knowingly violated, and/or permitted other officers of Northern Trust to violate, the provisions of 18 U.S.C. section 1005 by making one or more false entries in reports or statements of Northern Trust, including one or more letters from Northern Trust making false statements regarding a non-existent Northern Trust account in the name of McDonnell or the Family Trust, as well as false account statements.

48.     As a result of such false entries, BOC sustained damages in the amount of at least $14 million as further alleged herein.

## FOURTH CLAIM FOR RELIEF

### (Against Mel Clark and Northern Trust for Violation of the Computer Fraud and Abuse Act [18 U.S.C. Sections 1030(a)(2), 1030(a)(4), 1030(g)])

49.     BOC incorporates by reference paragraphs 1 through 37 of this Complaint as though fully set forth in this claim for relief.

50.     BOC alleges on information and belief that Clark intentionally exceeded authorized access to a computer and thereby procured and/or altered information contained in financial records of a financial institution.

51.     BOC alleges on information and belief that Clark also knowingly and with intent to defraud, exceeded authorized access to a protected computer, and by means of such conduct facilitated a fraud to obtain nearly $15 million from BOC.

52.     In particular, BOC alleges on information and belief that Clark accessed and/or altered Northern Trust account statement documents to falsely reflect a current account in McDonnell's name and in the name of the Family Trust, with an account balance of approximately $28 million.

53.     These actions resulted in the loss within a one-year period to BOC in the amount of at least $14 million.

54.     BOC alleges on information and belief that Clark's actions as alleged herein occurred in the course of his employment with Northern Trust.  Accordingly, BOC alleges that Northern Trust is vicariously liable for Clark's violations.

## FIFTH CLAIM FOR RELIEF

### (Against Northern Trust and Mel Clark for Negligence)

55.     BOC incorporates by reference paragraphs 1 through 37 of this Complaint as though fully set forth in this claim for relief.

56.     Northern Trust and Mel Clark (collectively, the "NT defendants") owed a duty to use ordinary care or skill in conducting the business of Northern Trust and to prevent harm to others.

57.     BOC alleges on information and belief that Northern Trust breached its duty by negligently supervising its employee Mel Clark.  Clark was incompetent or unfit to perform his duties as an officer and employee of Northern Trust in that he purposely or negligently aided McDonnell in perpetrating a fraud on BOC. BOC alleges on information and belief that Northern Trust had reason to believe that Clark was unfit to perform his duties in that, among other things: McDonnell

1  previously had one or more accounts at Northern Trust, which  Northern Trust

2  closed in or about the summer of 2017, due to suspicion of fraudulent activity;

3  Northern Trust was aware that, despite these prior issues, Mel Clark continued to

4  interact with McDonnell; and yet when Northern Trust received inquiries about

5  McDonnell from BOC, it did not contact BOC, but instead passed on the inquiries

6  to Mel Clark. Northern Trust had reason to believe that an undue risk of harm

7  would exist because of Clark's ongoing employment, and in particular, failed to

8  exercise due care in supervision of Mel Clark's interactions with McDonnell.

9       58.    BOC alleges on information and belief that the NT defendants also

10  breached their duty by (1) providing false or inaccurate information about a non-

11  existent Northern Trust account in the name of McDonnell or the Family Trust;

12  (2) providing McDonnell with one or more Northern Trust statements that were

13  unrelated to any account maintained by her or the Family Trust; and/or (3) by

14  failing to respond to inquiries from BOC to verify the existence of a Northern Trust

15  account in the name of McDonnell or the Trust, and instead contacting McDonnell,

16  whom Northern Trust knew from previous dealings was not a trustworthy

17  individual.

18       59.    As a proximate result of the NT defendants' negligence, BOC relied

19  on false Northern Trust letters and bank statements as verification of security for

20  the McDonnell loan and on that basis entered into a $15 million loan agreement

21  with McDonnell.

22       60.    As proximate result of the NT defendants' negligence, BOC was

23  damaged in an amount to be proven at trial, but which exceeds approximately $14

24  million.

25  **<u>SIXTH CLAIM FOR RELIEF</u>**

26  **(Against McDonnell for Breach of Written Contract)**

27       61.    BOC incorporates by reference paragraphs 1 through 37 of this

28  Complaint as though fully set forth in this claim for relief.

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{157800.8}

13

COMPLAINT

62.     McDonnell executed and delivered the Loan Documents as described below.  As part of the Loan Documents, McDonnell, as maker, executed and delivered the Note in favor of BOC.  *See* Exhibit 5.  Under the Note, McDonnell agreed to immediately pay all outstanding principal and accrued, but unpaid, interest upon an Event of Default under the Loan Documents.

63.     Under the Loan Documents, McDonnell agreed to pay all reasonable attorneys' fees and costs incurred by BOC as a result of McDonnell's Event of Default and/or failure to comply with Loan Documents.  *See* Exhibit 5, p. 3.

64.     McDonnell breached the Loan Documents by, among other things:

(a)     making or furnishing to BOC false and/or misleading representations, warranties, statements and documents, and/or such representations, warranties, statements and documents to BOC became false and/or misleading after they were made or furnished to BOC, as enumerated above;

(b)     failing to maintain $28,624,549.20 in the Account as required under the Loan Documents;

(c)     upon information and belief, becoming insolvent, unable to pay her debts in the ordinary course of business and/or her assets are less than her liabilities, thereby resulting in judgments or defaults on loans, extensions of credit, or other agreements with creditors that may materially affect her property or her ability to repay the Note or perform her obligations under the Loan Documents;

(d)     failing to act in good faith and fairly with BOC;

(e)     upon information and belief, using the Loan proceeds for prohibited business purposes under the Loan Documents, including, but not limited to, making payments for, or on behalf of Bellum or its affiliated entities;

(f)     causing BOC to be insecure under the Loan; and

(g)     acting or failing to act in violation of the Loan Documents as may be discovered.

65.     McDonnell's breach of the Loan Documents constitutes an Event of Default entitling BOC to accelerate the amount owed and to immediately demand full and complete payment of all outstanding principal and all accrued, unpaid interest owed under the Note, plus all attorneys' fees and costs incurred as a result of McDonnell's breach.

66.     On March 14, 2018, BOC delivered the Demand upon McDonnell, accelerating the amount owed under the Note, and demanding that McDonnell pay $13,988,053.72 by March 15, 2018 at 12:00 p.m. (PT).  Despite the Demand, McDonnell failed and refused to pay BOC.

67.     As a direct and proximate result of the breach of the Loan Documents, BOC has suffered, and continues to suffer, damages totaling in excess of $13,988,053.72, plus interest, attorneys' fees, and costs.  The full nature and extent of these damages are presently unknown and will be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### (Against Noravian for Negligent Misrepresentation)

68.     BOC incorporates by reference paragraphs 1 through 37 of this Complaint as though fully set forth in this claim for relief.

69.     As further alleged above, Noravian affirmatively represented to BOC that he witnessed Mel Clark sign the Control Agreement and that he obtained Clark's proper identification required under the law prior to signing the Control Agreement.

70.     Noravian's representations to BOC were false because he did not personally witness Clark sign the Control Agreement and did not obtain the required identification of Mel Clark required under the law prior to signing the Control Agreement.

71.     By notarizing the Control Agreement, Noravian made these material representations to induce BOC to enter into the Control Agreement and to loan money to McDonnell.

72.     As a party to the Control Agreement and as part of his statutory duty, Noravian owed a duty to BOC to exercise reasonable care in notarizing Mel Clark's signature on the Control Agreement.

73.     BOC justifiably and reasonably relied upon Noravian's representations in entering into the Control Agreement and in loaning millions of dollars to McDonnell.  BOC was unaware that Noravian's representations were false at the time it entered into the Control Agreement with McDonnell.

74.     As a direct and proximate cause of the negligent representations by Noravian, BOC suffered, and continues to suffer, damages in excess of $13,988,053.72, plus interest, attorneys' fees, and costs.  The full nature and extent of these damages will be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### (Against McDonnell for Money Had and Received)

75.     BOC incorporates by reference paragraphs 1 through 37 of this Complaint as though fully set forth in this claim for relief.

76.     During the period of February 1, 2018 to March 14, 2018, McDonnell became indebted to BOC in an amount in excess of $13,988,053.72 for money had and received by her from BOC.

77.     The whole of the above sum has not been paid, although demand therefor has been made.

78.     There is now due, owing and unpaid from McDonnell to BOC the sum of not less than $13,988,053.72, together with interest and attorneys' fees and costs as may be provided by law.

## NINTH CLAIM FOR RELIEF

### (Against McDonnell for Account Stated)

79.     BOC incorporates by reference paragraphs 1 through 37 of this Complaint as though fully set forth in this claim for relief.

80.     An account was stated by and between McDonnell and BOC in which it was agreed and understood that McDonnell was indebted to BOC in a sum in excess of $13,988,053.72.

81.     The whole of the above sum has not been paid, although demand therefor has been made.

82.     There is now due, owing and unpaid from McDonnell to BOC the sum of not less than $13,988,053.72, together with interest, attorneys' fees and costs as may be provided by law.

## TENTH CLAIM FOR RELIEF

### (Against McDonnell for Open Book Account)

83.     BOC incorporates by reference paragraphs 1 through 37 of this Complaint as though fully set forth in this claim for relief.

84.     From February 1, 2018 to March 14, 2018, McDonnell became indebted to BOC on an open book account for money due in a sum in excess of $13,988,053.72 for money lent to McDonnell at her request.

85.     The whole of the above sum has not been paid, although demand therefor has been made.

86.     There is now due, owing and unpaid from McDonnell to BOC the sum of not less than $13,988,053.72, together with interest, attorneys' fees and costs as may be provided by law.

## ELEVENTH CLAIM FOR RELIEF

### (Against McDonnell for Appointment of Receiver)

87.     BOC incorporates by reference paragraphs 1 through 37 of this Complaint as though fully set forth in this cause of action.

88.     This Court should appoint a receiver to take control and possession of McDonnell's real, personal, and trust property.  McDonnell fraudulently obtained $14,660,255.09 from BOC based upon fabricated bank statements and a Control Agreement from Northern Trust, and litany of intentional misrepresentations about her family and her right to receive $80 million from the Family Trust. McDonnell's fraudulent conduct toward BOC conforms to a pattern of fraud involving other creditors.

89.     BOC will suffer immediate and irreparable harm or injury unless McDonnell and her agents, representatives, assigns, attorneys, affiliates, officers, servants and employees, those people in active concert or participation with them, and all entities controlled by them, are restrained from, directly or indirectly, transferring, conveying, concealing, secreting, hypothecating, pledging, or otherwise disposing of her real or personal property, except to pay for reasonably necessary living expenses as this Court deems appropriate.

90.     Unless a receiver is appointed, BOC justifiably believes that McDonnell will transfer, conceal, convey, squander, or dispose of her assets so as to avoid recovery to BOC.  If that occurs, BOC will be left without any adequate legal remedy, thereby causing it to suffer immediate and irreparable harm.

91.     BOC has demonstrated a reasonable likelihood that it will succeed on the merits of its claims against Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, BOC prays for judgment against Merchants for compensatory damages up to the limit of Merchants' surety bond, together with fees and costs as allowed by law and such other and further relief as the Court deems just and appropriate.

**WHEREFORE**, BOC prays for judgment against all other Defendants in this action, jointly and severally, as follows:

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{157800.8}

18

COMPLAINT

1.      For general damages in a sum of not less than $13,988,053.72 or an amount according to proof, together with interest thereon at the legal rate;

2.      For exemplary and punitive damages in an amount according to proof at the time of trial;

3.      For appointment of a receiver over all of the real, personal, and trust property of McDonnell pending final judgment;

4.      For a temporary restraining order, preliminary injunction and/or permanent injunction enjoining McDonnell and her agents, representatives, assigns, attorneys, affiliates, officers, servants and employees, those people in active concert or participation with them, and all entities controlled by them, from, directly or indirectly, transferring, conveying, concealing, secreting, hypothecating, pledging, or otherwise disposing of her real or personal property, except to pay for reasonably necessary living expenses as this Court deems appropriate.

5.      For attorneys' fees and costs as allowed by law;

6.      For such other and further relief as the Court deems to be just and appropriate.


Dated:  July 6, 2018                    UMBERG ZIPSER LLP


                                        _____
                                        Thomas J. Umberg
                                        Dean J. Zipser
                                        Carole E. Reagan
                                        Attorneys for Plaintiff BANC OF
                                        CALIFORNIA, NATIONAL
                                        ASSOCIATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff Banc of California, National Association, demands a jury trial in this matter.

Dated:  July 6, 2018                              UMBERG ZIPSER LLP


_____
Thomas J. Umberg
Dean J. Zipser
Carole E. Reagan
Attorneys for Plaintiff BANC OF
CALIFORNIA, NATIONAL
ASSOCIATION