**EXHIBIT 2**

BARRY K. ROTHMAN
GORDON J. ZUIDERWEG
MARTIN J. KOTOWSKI
LAWRENCE M. BOESCH
ALAN E. WALCHER

LAW OFFICES OF
**BARRY K. ROTHMAN**
1901 AVENUE OF THE STARS
SUITE 370
LOS ANGELES, CALIFORNIA 90067

TELEPHONE: (310) 557-0062
TELECOPIER: (310) 857-9080
E-MAIL: BKR@BKRLEGAL.COM
WWW.BKRLEGAL.COM

OF COUNSEL
FREDERIC R. BRANDFON

December 26, 2017

**VIA E-MAIL**
bryan.hamilton@bancofcal.com

Bryan Hamilton

Re:   **Bellum / Banc of California**

Dear Bryan:

Enclosed please find a Notification and Control Agreement for your review.

It is contemplated that this document, once approved by you, will be executed by Northern Trust and then returned to me, as I hold all the original documents.

When the loan transacts with you, we will ensure the fact that the enclosed Agreement is delivered to Northern Trust with a written confirmation that it has been delivered.

Please review the enclosed Notification and Control Agreement and should you have any questions, please advise me at any time.

Best regards,

LAW OFFICES OF BARRY K. ROTHMAN

Barry K. Rothman

BKR/cf
Enclosure
cc:   Mary Carole McDonnell (via email w/o enclosure)

122617.Bellum.wpd

## NOTIFICATION AND CONTROL AGREEMENT

THIS NOTIFICATION AND CONTROL AGREEMENT (this "Agreement") is made this 30th day of November, 2017 by and among Carole McDonnell (the "Pledgor"), The Northern Trust Company, 201 S. Lake Ave. Suite 600, Pasadena, CA 91101, in its capacity as custodian (the "Custodian") and _____ in its capacity as secured party (the "Secured Party").

The Pledgor has granted to the Secured Party a security interest in the investment property held in its securities account No. ▅▅▅▅ 7332 maintained with the Custodian (the "Account"), all financial assets now or hereafter credited to the Account, and all additions, substitutions, replacements, proceeds, income, dividends and distributions thereon (collectively, the "Collateral"), pursuant to, and more particularly described in, a [Credit, Pledge and Security Agreement] dated _____, 201_ (as amended, restated or otherwise modified from time to time, the "Pledge Agreement") from the Pledgor to the Secured Party. The Custodian is in possession of the Collateral pursuant to a certain Discretionary Investment Management Agreement and/or other account opening documents and terms and conditions (the "Custodian Agreement"). Pursuant to the Pledge Agreement, the Secured Party has required the execution and delivery of this Agreement.

NOW, THEREFORE, for valuable consideration and intending to be legally bound, the parties hereto agree and acknowledge as follows:

1. Possession of Collateral. The Custodian represents and acknowledges that: (a) the Collateral is in its possession or in possession of a subcustodian or clearing corporation engaged by the Custodian as an "agent" of the Custodian, (b) the Pledgor's interest in the Collateral appears on the Custodian's books and records, and (c) the Custodian is the "securities intermediary" of the Account as that term is defined in Article 8 of the Uniform Commercial Code (as adopted and enacted and in effect from time to time in the Commonwealth of Pennsylvania) ("UCC"). Pledgor agrees and acknowledges that Secured Party shall be the entitlement holder of the Collateral while the pledge is outstanding. To that end, the Pledgor instructs Custodian, and Custodian agrees, to re-title and to carry the Account on the books of Custodian as an account entitled "_____" as secured party for Mary Carole McDonnell. The parties agree that Custodian will treat all property deposited or credited to the Account as financial assets under Article 8 of the UCC.

2. Notice of Security Interest. The Custodian acknowledges that this Agreement constitutes written notification to the Custodian, pursuant to Articles 8 and 9 of the UCC and applicable federal regulations for the Federal Reserve Book Entry System, of the Secured Party's security interest in the Collateral. The Pledgor, Secured Party and Custodian are also entering into this Agreement to provide for the Secured Party's control of the Collateral and to perfect, and confirm the priority of, the Secured Party's security interest in the Collateral. The Custodian agrees to promptly make all necessary entries or notations in its books and records to reflect the Secured Party's security interest in the Collateral.

3. Control. The Custodian, without further consent by the Pledgor, hereby agrees to promptly comply with all entitlement orders, instructions, and directions of any kind originated by Secured Party concerning the Collateral, to liquidate the Collateral as and to the extent directed by the Secured Party, and to pay over to the Secured Party within one business day of receipt all proceeds therefrom to the extent necessary to satisfy the Pledgor's obligations, without any setoff or deduction.

4. Trading and Withdrawals. The Custodian agrees that Secured Party is hereby exercising exclusive control over the Collateral and that Custodian will not comply with any entitlement orders or other directions (including trades or withdrawals) concerning the Collateral originated by the Pledgor. Notwithstanding any other provision hereof, the Securities Intermediary is authorized to charge and

collect from the Account any and all accrued fees payable to the Securities Intermediary from, and allocable to, the Account under and pursuant to the terms of the Account Opening Agreement (including custodial fees and accrued regular advisory / investment management fees earned, if any) unless such fees are paid directly by or on behalf of the Pledgor. Notwithstanding the foregoing, unless directed in writing otherwise by the Secured Party, the Pledgor may (a) receive for its own account all cash dividends and interest on the Collateral, (b) exercise any voting rights or consensual rights the Pledgor may have as to any of the Collateral for any purpose not inconsistent with the Pledge Agreement, and (c) engage in Permitted Trading. "Permitted Trading" for purposes of this Agreement is the right of the Pledgor to sell Collateral in the Account and invest the proceeds of such sale, as well as other cash available in the Account from time to time, in actively traded marketable securities, cash or cash equivalents, so long as such proceeds of such sale, as well as securities, cash and cash equivalents, are credited to the Account and become Collateral. The Pledgor hereby acknowledges and agrees that the Secured Party's consent to Permitted Trading in no way constitutes a waiver of any of its rights under the Pledge Agreement and that it is the obligation of the Pledgor to ensure at all times that the type and amount of the Collateral in the Account meets the maintenance requirements contained in the Pledge Agreement.

5. <u>Custodian Agreement</u>. The Custodian represents and covenants that (i) it shall provide Secured Party upon request made through the Law Offices of David Kagel, Esq. with any detail or information on the Account and it shall simultaneously send to the Secured Party copies of all notices given and statements and, if requested, confirmations rendered pursuant to the Custodian Agreement and shall notify the Secured Party of the termination of the Custodian Agreement, (ii) it has not received nor granted a security interest in the Account with respect to any Collateral, and will not do so while this Agreement is in effect or to any other Collateral, (iii) it will not allow check-writing nor lend securities, make margin loans, allow for the sale of covered calls or take similar action with respect to any Collateral represented in the Account while this Agreement is in effect; (iv) its records do not indicate any adverse claims concerning the Account nor do they indicate any persons, other than Pledgor(s) and Secured Party, as having any interest in the Account, and (v) it has not entered into any other agreements pursuant to which any person other than the Pledgor or the Secured Party have been given authority to issue instructions with respect to the Account or any Collateral therein, and will not do so while this Agreement is in effect. Notwithstanding anything contained in the Custodian Agreement, so long as the Pledge Agreement remains in effect, neither the Pledgor nor the Custodian shall terminate the Custodian Agreement without thirty (30) days' prior written notice to the other party and the Secured Party. In the event of any conflict between the express provisions of this Agreement and the Custodian Agreement, the provisions hereof shall control. Regardless of any provision in the Custodian Agreement, the Commonwealth of Pennsylvania shall be deemed to be the Custodian's jurisdiction for the purposes of this Agreement and the perfection and priority of the Secured Party's security interest in the Collateral. In the event the Custodian no longer serves as custodian for the Collateral, the Collateral shall be transferred (i) to a successor custodian satisfactory to the Secured Party, provided that prior to such transfer, such successor custodian executes an agreement that is in all material respects the same as this Agreement, or (ii) if no satisfactory successor has been designated, then as directed by the Secured Party through the Law Offices of Barry K. Rothman, Esq.

6. <u>Account Detail</u>. While the Agreement remains in effect, Pledgor hereby authorizes and instructs Custodian to send to Lender any Account information and data, including but not limited to account statements, as Lender may request. Pledgor's authorization extends to any format in which the Custodian may be able to transfer the information, including providing the Lender with online lookup capabilities and/or the delivery of electronic data files containing Account information and data.

7. <u>Indemnity</u>. The Pledgor shall indemnify and hold the Custodian harmless from any and all losses, claims, damages, liabilities, expenses and fees, including reasonable attorneys' fees, resulting from the execution of or performance under this Agreement and the delivery by the Custodian of all or

any part of the Collateral to the Secured Party pursuant to this Agreement, unless such losses, claims, damages, liabilities, expenses or fees are primarily attributable to the Custodian's gross negligence or willful misconduct. This indemnification shall survive the termination of this Agreement.

8. **Protection of Custodian.** Except as required by Paragraph 3 hereof, the Custodian shall have no duty to require any cash or securities to be delivered to it or to determine that the amount and form of assets constituting Collateral comply with any applicable requirements. The Custodian may hold the securities in bearer, nominee, federal reserve book entry, or other form and in any securities depository or UCC clearing corporation, with or without indicating that the securities are subject to a security interest; provided, however, that all Collateral shall be identified on the Custodian's books and records as subject to the Secured Party's security interests and shall be in a form that permits transfer to the Secured Party without additional authorization or consent of the Pledgor. The Custodian may rely and shall be protected in acting upon any notice, instruction, or other communication, which it reasonably believes to be genuine and authorized. As between the Pledgor and the Custodian, the terms of the Custodian Agreement shall apply with respect to any losses or liabilities or fees, costs or expenses of such parties arising out of matters covered by this Agreement. The Pledgor agrees that the Custodian will not be liable to the Pledgor for complying with entitlement orders originated by the Secured Party, unless the Custodian takes the action after it is served with an Injunction or other legal process enjoining it from doing so issued by a court of competent jurisdiction and has had a reasonable opportunity to act on the injunction or other legal process.

The Custodian will be excused from failing to act or delay in acting, and no such failure or delay shall constitute a breach of this Agreement or otherwise give rise to any liability of the Custodian, if and only to the extent that (i) such failure or delay is directly caused by circumstances beyond the Custodian's reasonable control, including but not limited to legal constraint, emergency conditions, action or inaction of governmental, civil or military authority, fire, strike, lockout or other labor dispute, war, riot, theft, flood, earthquake or other natural disaster, breakdown of public or private or common carrier communications or transmission facilities or equipment failure, or (ii) such failure or delay resulted from the Custodian's reasonable belief based upon opinion of legal counsel that the action would have violated any material guideline, rule or regulation of any governmental authority.

9. **Termination/Release of Collateral.** (a) This Agreement shall terminate automatically upon receipt by the Custodian of written notice executed by two officers of the Secured Party named on Exhibit "A" attached hereto (the "Schedule of Authorized Officers") that (i) all of the obligations secured by Collateral have been satisfied, or (ii) all of the Collateral may be released, whichever is sooner, and the Custodian shall thereafter be relieved of all duties and obligations hereunder. In addition, any notice from the Secured Party relating to release of all or any portion of the Collateral not permitted by this Agreement without the consent of the Secured Party shall be effective only if executed by two officers of the Secured Party named on the Schedule of Authorized Officers. The Schedule of Authorized Officers may be amended from time to time by the Secured Party and any such amendment will be delivered to the Custodian at its address for Notices described below. The Custodian shall rely on the Schedule of Authorized Officers in its possession until it has actually received an amended Schedule from the Secured Party.

(b) Custodian may terminate this Agreement without penalty at any time upon the giving of at least sixty (60) days prior written notice to Secured Party and Pledgor. If Custodian terminates this Agreement, it shall comply with Secured Party's and Pledgor's joint instructions concerning disposition of the Accounts and their contents. If Custodian terminates this Agreement in accordance with this subparagraph, and if Custodian receives no written instructions signed by both Secured Party and Pledgor regarding the transfer of the Account(s) prior to the effective date of the termination, Custodian, Secured Party and Pledgor agree that upon expiration of the termination notice period, Custodian will close the

Account(s) and transfer all cash, securities and other assets in the Account(s) to Secured Party (at Custodian's option, either by transferring such assets to a securities account opened by Secured Party, or by liquidating the assets and distributing the cash proceeds to Secured Party).

10. **Waiver and Subordination of Rights.** The Custodian hereby waives its right to setoff any obligations of the Pledgor to the Custodian against any or all cash, securities, financial assets and other investment property held by the Custodian as Collateral, and hereby subordinates in favor of the Secured Party any and all liens, encumbrances, claims or security interests which the Custodian may have against the Collateral, either now or in the future, except that the Custodian will retain its prior lien on the property held as Collateral only to secure payment for property purchased for Collateral and normal accrued commissions and fees relating to the property held as Collateral. The Custodian will not agree with any third party that the Custodian will comply (and the Custodian will not comply) with any entitlement orders, instructions or directions of any kind concerning the Collateral originated by such third party without the Secured Party's prior written consent. Except for the claims and interests of the Secured Party and the Pledgor in the Collateral, the Custodian does not know of any claim to or interest in the Collateral. The Custodian will use reasonable efforts to promptly notify the Secured Party and the Pledgor if any other person claims that it has a property interest in any of the Collateral.

11. **Expenses.** The Pledgor shall pay all fees, costs and expenses (including reasonable fees and expenses of internal or external counsel) of enforcing any of the Secured Party's rights and remedies upon any breach (by the Custodian or the Pledgor) of any of the provisions of this Agreement.

12. **Notices.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder ("Notices") must be in writing and will be effective upon receipt. Notices may be given in any manner to which the parties may separately agree, including electronic mail. Without limiting the foregoing, first-class mail, facsimile transmission (with evidence of receipt) and commercial courier service are hereby agreed to as acceptable methods for giving Notices. Regardless of the manner in which provided, Notices may be sent to a party's address as set forth below, or to such other address as any party may give to the others for such purpose in accordance with this paragraph. In all instances communications between the Custodian and Secured Party shall go through the Law Offices of Barry K. Rothman, Esq. who will facilitate, coordinate, and consummate all communications between the respective parties.

13. **Changes in Writing.** No modification, amendment or waiver of, or consent to any departure by any party from, any provision of this Agreement will be effective unless made in a writing signed by the parties hereto, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on the Pledgor in any case will entitle the Pledgor to any other or further notice or demand in the same, similar or other circumstance.

14. **Entire Agreement.** This Agreement (including the documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof.

15. **Counterparts.** This Agreement may be signed in any number of counterpart copies and by the parties hereto on separate counterparts, but all such copies shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile transmission shall be effective as delivery of a manually executed counterpart. Any party so executing this Agreement by facsimile transmission shall promptly deliver a manually executed counterpart, provided that any failure to do so shall not affect the validity of the counterpart executed by facsimile transmission.

16. <u>Successors and Assigns</u>. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns; provided, however, that the Pledgor may not assign this Agreement in whole or in part without the Secured Party's prior written consent and the Secured Party at any time may assign this Agreement in whole or in part.

17. <u>Governing Law and Jurisdiction</u>. This Agreement has been delivered to and accepted by the Secured Party and will be deemed to be made in the Commonwealth of Pennsylvania. THIS AGREEMENT WILL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, EXCLUDING ITS CONFLICT OF LAWS RULES. Each of the parties hereby irrevocably consents to the exclusive jurisdiction and venue of any state or federal court located within the county where the Secured Party's office indicated above is located.

18. <u>**WAIVER OF JURY TRIAL**</u>. EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. EACH PARTY HERETO ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

[INTENTIONALLY LEFT BLANK]

WITNESS the due execution hereof as a document under seal, as of the date first written above.

**Pledgor's Address for Notices:**

▆▆▆▆▆▆▆▆▆▆
La Canada, CA ▆▆▆▆
Attention: Mary Carole McDonnell
Facsimile Number: ____ - ___ - ____

**PLEDGOR:**

Mary Carole McDonnell, Individually

_____
Printed Name: _____
Telephone Number (310) 210-1881

**Secured Party's Address for Notices:**

**SECURED PARTY:**

By: _____
Name: _____
Title: _____

**Custodian's Address for Notices:**

The Northern Trust Company
201 South Lake Avenue
Suite 600,
Pasadena, CA USA 91101

Attention: Mel Clark
Telephone Number: 626 583 5600

With copy to:

Law Offices of Barry K. Rothman

1901 Avenue of the Stars
Suite 370
Los Angeles, Ca 90067
Telephone Number: (310) 557-0062

**CUSTODIAN:**

The Northern Trust Company

By: _____
Name: Mel Clark
Title: Wealth Manager

TriState Control Agreement (form 3.6.15)