# EXHIBIT 8

# PROMISSORY NOTE

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $15,000,000.00 | 02-01-2018 | 02-01-2019 | 30212 | | | 10369 | |
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** Mary Carole McDonnell
[redacted]
La Canada, CA [redacted]

**Lender:** Banc of California, National Association
Business Banking - Los Angeles Office
601 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017

**Principal Amount: $15,000,000.00** **Initial Rate: 4.500%** **Date of Note: February 1, 2018**

**PROMISE TO PAY.** Mary Carole McDonnell ("Borrower") promises to pay to Banc of California, National Association ("Lender"), or order, in lawful money of the United States of America, the principal amount of Fifteen Million & 00/100 Dollars ($15,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on February 1, 2019. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning March 1, 2018, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to any accrued unpaid interest; then to principal; and then to any late charges, fees and costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST RESERVES.** Borrower authorizes Lender to place $675,000.00 of the Principal Amount as an interest reserve, which is the interest due on the Note ("Interest Reserve"). The monthly interest payments will be automatically deducted by Lender on the day the payment is due from the interest reserve account, Account No [redacted] 7672 with Lender, which shall be maintained by Borrower pursuant to the Assignment of Deposit Agreement concurrently executed with this Note. Interest will accrue, as described in this Note, on amounts deducted from the Interest Reserve. In the event the interest due under this Note exceeds the Interest Reserve, Borrower will pay accrued unpaid interest when due according to the terms of this Note. Upon maturity, Lender will not advance or disburse the remaining Interest Reserve, if any, to Borrower. The principal due upon maturity will not include any remaining Interest Reserve.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the The Prime Rate, as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 4.500% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate equal to the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 4.500%. NOTICE: Under no circumstances will the interest rate on this Note be less than 4.500% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00**. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Banc of California, National Association, Loan Servicing, 3 MacArthur Place Santa Ana, CA 92707.**

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**ADDITIONAL FINANCIAL REQUIREMENTS.**

**Verification of Liquid Assets.** Monthly, as soon as available, but in no event later than fifteen (15) days after the period then ended, Borrower's complete copies of Northern Trust Securities, Inc.'s statement for collateral account [redacted] 7332.

**Other Financial Covenants.** Collateral account must have a minimum pledged amount of $15,000,000.00 held by Mary Carole McDonnell individually for the life of the loan.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**JUDICIAL REFERENCE.** To the extent the waiver of the right to a jury trial is not enforceable in any proceeding, the parties hereto agree that any claim shall be determined by a judicial reference proceeding in accordance with the provisions of California Code of Civil Procedure Sections 638 et seq. The parties intend this section on judicial reference to be specifically enforceable. Venue for the reference proceeding shall be in the County of Orange, California. Upon the written request of any party, the parties shall select a single referee, who shall be a retired California state or federal court judge or justice. If the parties do not agree upon a referee within 10 days of such written request, then any party shall have the right to request the court in Orange County, California to appoint a referee pursuant to California Code of Civil Procedure Section 640(b). The referee shall be appointed to sit with all of the powers provided by law. The parties shall not seek to appoint a referee that may be disqualified pursuant to California Code of Civil Procedure sections 641 or 641.2 without the prior written consent of all parties. Except as expressly set forth in this Agreement, the referee shall determine the manner in which the reference proceeding is conducted, including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. The referee may require one or more prehearing conferences. The parties hereto shall be entitled to discovery, and the referee shall oversee discovery in accordance with the rules of discovery, and shall enforce all discovery orders in the same manner as any trial court judge in proceedings at law in the State of California. The referee shall conduct the proceedings in accordance with California Code of Civil Procedure, the Rules of Court, and California Evidence Code, except as otherwise specifically agreed by the parties and approved by the referee, and the referee shall determine all issues in accordance with California substantive and procedural law. Each party acknowledges and agrees that the appointed referee shall have the power to decide all issues in the applicable action or proceeding, whether of fact or law. The referee shall be empowered to enter equitable as well as legal relief and rule on any motion which would be authorized in a trial, including motions to dismiss, motions for default judgment, or motions for summary judgment.

The referee shall report his or her decision, which report shall also include findings of fact and conclusions of law. The referee shall issue a decision, and pursuant to California Code of Civil Procedure Sections 644 and 645, the referee's decision shall be entered by any court of competent jurisdiction as a judgment in the same manner as if the action had been tried by the court. The final judgment or order from any appealable decision or order entered by the referee shall be fully appealable as if it has been entered by the court of competent jurisdiction. The parties recognize and agree that all claims resolved in a judicial reference proceeding pursuant hereto will be decided by a referee and not by a jury. This Agreement constitutes a "reference agreement" between the parties within the meaning of and for purposes of California Code of Civil Procedure Section 638. Notwithstanding the foregoing, Lender may, in its sole and absolute discretion, commence any action in any court having the proper jurisdiction for that action to enforce its rights and remedies under this Agreement and/or the Related Documents. The parties consent to the jurisdiction of the courts in Orange County, California, or at Lender's request, in any jurisdiction where any collateral for the loan is located. The parties irrevocably and unconditionally submit to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waive: (a) any objection the parties might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum. The parties agree and consent that Lender may serve legal papers on the other parties by registered or certified mail, which shall be sufficient to obtain jurisdiction.

Notwithstanding the appointment of the referee or pending the appointment of the referee, the Orange County superior court, or any court of competent jurisdiction, shall have the power to issue temporary, injunctive, or provisional remedies. Nothing herein shall be deemed to apply to or limit the right of Lender to (a) exercise self-help remedies such as, but not limited to, setoff or recoupment, (b) foreclose judicially or nonjudicially against any real or personal property or collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from any court of competent jurisdiction temporary, provisional or ancillary remedies (including, but not limited to, injunctive relief, writs of possession, prejudgment attachment, writs of attachment, garnishment, temporary restraining orders, preliminary injunctions, a protective order or the appointment of a receiver), and/or (d) pursue rights against a party in a third-party proceeding in any action brought against Lender (including actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any judicial reference proceeding. This Agreement does not limit the right of any party to exercise or oppose any of the rights and remedies described in clauses (a) through (d) and any such exercise or opposition does not waive the right of any party, including, but not limited to, the claimant in any such action, to require submission to judicial reference the underlying merits of the claim occasioning resort to such remedies pursuant to this Agreement. At any time upon Lender's request, the parties agree to submit to a judicial reference proceeding. For avoidance of doubt, if an action is commenced in a court and Lender requests for submission to a judicial reference proceeding on the merits of the claims subject to such action, the parties agree to solve such claims under the judicial reference proceeding pursuant to this Agreement.

No provision in the loan documents regarding submission to jurisdiction and/or venue in any court is intended or shall be construed to be in derogation of the provisions in any loan document for judicial reference of any claim. If a claim includes multiple causes of action, some of which are found not to be subject to this Agreement, the parties shall stay the proceedings of the causes of action or part or parts thereof not subject to this Agreement until all other claims subject to this Agreement or parts thereof are resolved in accordance with this Agreement. If there are claims by or against multiple parties, some of which are not subject to this Agreement, the parties shall sever the claims subject to this

**Agreement and resolve them in accordance with this Agreement. Any party to this Agreement may file an original counterpart or a copy of this section with any court as written evidence of the consent of the parties hereto to the waiver of their right to trial by jury and the agreements contained herein regarding the application of judicial reference in the event of the invalidity of such jury trial waiver.**

All fees and costs incurred in relation to the judicial reference proceeding shall be paid in accordance with the section titled Attorneys' Fees; Expenses in the loan documents. The compensation of the referee shall not exceed the prevailing rate for like services.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: Northern Trust Securities, Inc's Account No. [redacted]7332 pledged by the Grantor, described in a Pledge Agreement dated February 1, 2018 between Grantor and Lender.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **Mary Carole McDonnell, Individually.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**COUNTERPART.** This agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same agreement.

**FACSIMILE OR ELECTRONIC MAIL DOCUMENTS INDEMNIFICATION.** In accepting delivery of this document by method of fax transmission or electronic mail, and by affixing your signature upon all or any portion of this document, you hereby consent and agree to the following: The undersigned hereby waives any right, claim, or the defense that the incompleteness of any documentation received by fax transmission or electronic mail (the "Faxed or Email Document"), in comparison to the originally transmitted document from which the fax or email was generated or issued (the "Original Document"), resulted in damages by way of such incomplete document, or would have caused the undersigned not to sign this document had the undersigned been aware of additional verbiage, terms or conditions that are contained in the Original Document from which the fax or email was issued (the "Purported Missing Terms"). By affixing your signature upon all or any portion of the Faxed or Emailed Document, the undersigned further agrees to be bound by the Purported Missing Terms as if they had appeared in the Faxed or Emailed Document. Should the undersigned have any reason to believe that Purported Missing Terms exist between the Original Document and the Faxed or Emailed Document, the undersigned shall immediately notify Lender of any such Purported Missing Terms.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Banc of California, National Association Loan Servicing 3 MacArthur Place Santa Ana, CA 92707.

**ADDITIONAL INFORMATION.** Borrower covenants and agrees with Lender that, so long as this Note remains in effect, Borrower will furnish such additional information and statements, as Lender may request from time to time.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

x ______________________________
Mary Carole McDonnell

LaserPro, Ver. 17.3.10.006 Copr. D+H USA Corporation 1997, 2018. All Rights Reserved. - CA [illegible] TR-4675 PR-12

# PLEDGE AGREEMENT

# PLEDGE AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $15,000,000.00 | 02-01-2018 | 02-01-2019 | 30212 | | | 10369 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Mary Carole McDonnell
[redacted]
La Canada, CA [redacted]

**Grantor:** Mary Carole McDonnell
[redacted]
La Canada, CA [redacted]

**Lender:** Banc of California, National Association
Business Banking - Los Angeles Office
601 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017

---

**THIS PLEDGE AGREEMENT dated February 1, 2018, is made and executed between Mary Carole McDonnell ("Grantor") and Banc of California, National Association ("Lender").**

**GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.**

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means Grantor's present and future rights, title and interest in and to the following described investment property, together with any and all present and future additions thereto, substitutions therefor, and replacements thereof, together with any and all present and future certificates and/or instruments evidencing any securities and further together with all credit balances and money credited to the account, all investment property carried in the account, all books and records relating to the account in any form, and all income and Proceeds as described herein:

**Northern Trust Securities, Inc.'s Account N[redacted] 7332 with a minimum balance of $28,624,549.20**

**GRANTOR'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Grantor agrees that Lender need not tell Grantor about any action or inaction Lender takes in connection with this Agreement; (B) Grantor assumes the responsibility for being and keeping informed about the Collateral; and (C) Grantor waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral.

**GRANTOR'S WAIVERS.** Except as prohibited by applicable law, Grantor waives any right to require Lender to (A) make any presentment, protest, demand, or notice of any kind, default by any guarantor or surety, or any action or nonaction taken by Lender, or any other guarantor or surety of Borrower; (B) in the event of default under the Indebtedness proceed against any person before proceeding against Grantor; (C) in the event of default under the Indebtedness proceed against any collateral for the Indebtedness before proceeding against Grantor; (D) apply any payments or proceeds received against the Indebtedness in any order; (E) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G) pursue any remedy or course of action in Lender's power whatsoever.

Grantor also waives any and all rights or defenses arising by reason of (A) any disability or other defense of Borrower, any other guarantor or surety or any other person; (B) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (C) the application of proceeds of the Indebtedness for purposes other than the purposes understood and intended by Grantor and Lender; (D) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (E) any statute of limitations in any action under this Agreement or on the Indebtedness; or (F) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Grantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Grantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Grantor further understands and agrees that this Agreement is a separate and independent contract between Grantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Grantor acknowledges that Grantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Until all Indebtedness is paid in full, Grantor waives any right to enforce any remedy Grantor may have against any guarantor, surety, or other person, and further, Grantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** Grantor represents and warrants to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all security interests, liens, encumbrances and claims of others except as disclosed to and accepted by Lender in writing prior to execution of this Agreement.

**Right to Pledge.** Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral.

**Authority; Binding Effect.** Grantor has the full right, power and authority to enter into this Agreement and to grant a security interest in the Collateral to Lender. This Agreement is binding upon Grantor as well as Grantor's successors and assigns, and is legally enforceable in accordance with its terms. The foregoing representations and warranties, and all other representations and warranties contained in this Agreement are and shall be

# PLEDGE AGREEMENT
## (Continued)



continuing in nature and shall remain in full force and effect until such time as this Agreement is terminated or cancelled as provided herein.

**No Further Assignment.** Grantor has not, and shall not, sell, assign, transfer, encumber or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults existing under the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly perform each of the terms, conditions, covenants and agreements, if any, contained in the Collateral which are to be performed by Grantor.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property, including but not limited to that certain Bank Account Control Agreement dated January 31, 2018 among Northern Trust Securities, Inc., Grantor and Lender. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** Lender may hold the Collateral until all Indebtedness has been paid and satisfied. Thereafter Lender may deliver the Collateral to Grantor or to any other owner of the Collateral. Lender shall have the following rights in addition to all other rights Lender may have by law:

**Maintenance and Protection of Collateral.** Lender may, but shall not be obligated to, take such steps as it deems necessary or desirable to protect, maintain, insure, store, or care for the Collateral, including paying of any liens or claims against the Collateral. This may include such things as hiring other people, such as attorneys, appraisers or other experts. Lender may charge Grantor for any cost incurred in so doing. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used. If the Collateral consists of stock, bonds or other investment property for which no certificate has been issued, Grantor agrees, at Lender's request, either to request issuance of an appropriate certificate or to give instructions on Lender's forms to the issuer, transfer agent, mutual fund company, or broker, as the case may be, to record on its books or records Lender's security interest in the Collateral. Grantor also agrees to execute any additional documents, including but not limited to, a control agreement, necessary to perfect Lender's security interest as Lender may desire.

**Income and Proceeds from the Collateral.** Lender may receive all Income and Proceeds and add it to the Collateral. Grantor agrees to deliver to Lender immediately upon receipt, in the exact form received and without commingling with other property, all Income and Proceeds from the Collateral which may be received by, paid, or delivered to Grantor or for Grantor's account, whether as an addition to, in discharge of, in substitution of, or in exchange for any of the Collateral.

**Application of Cash.** At Lender's option, Lender may apply any cash, whether included in the Collateral or received as Income and Proceeds or through liquidation, sale, or retirement, of the Collateral, to the satisfaction of the Indebtedness or such portion thereof as Lender shall choose, whether or not matured.

**Transactions with Others.** Lender may (1) extend time for payment or other performance, (2) grant a renewal or change in terms or conditions, or (3) compromise, compound or release any obligation, with any one or more obligors, endorsers, or guarantors of the Indebtedness as Lender deems advisable, without obtaining the prior written consent of Grantor, and no such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**All Collateral Secures Indebtedness.** All Collateral shall be security for the Indebtedness, whether the Collateral is located at one or more offices or branches of Lender. This will be the case whether or not the office or branch where Grantor obtained Grantor's loan knows about the Collateral or relies upon the Collateral as security.

**Collection of Collateral.** Lender at Lender's option may, but need not, collect the Income and Proceeds directly from the Obligors. Grantor authorizes and directs the Obligors, if Lender decides to collect the Income and Proceeds, to pay and deliver to Lender all Income and Proceeds from the Collateral and to accept Lender's receipt for the payments.

**Power of Attorney.** Grantor irrevocably appoints Lender as Grantor's attorney-in-fact, with full power of substitution, (a) to demand, collect, receive, receipt for, sue and recover all Income and Proceeds and other sums of money and other property which may now or hereafter become due, owing or payable from the Obligors in accordance with the terms of the Collateral; (b) to execute, sign and endorse any and all instruments, receipts, checks, drafts and warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, execute and deliver Grantor's release and acquittance for Grantor; (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in Lender's own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable; and (e) to execute in Grantor's name and to deliver to the Obligors on Grantor's behalf, at the time and in the manner specified by the Collateral, any necessary instruments or documents.

**Perfection of Security Interest.** Upon Lender's request, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used. Upon Lender's request, Grantor will sign and deliver any writings necessary to perfect Lender's security interest. Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any

# PLEDGE AGREEMENT
## (Continued)



amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during the term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of the Collateral in Lender's possession, but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility for (A) any depreciation in value of the Collateral or for the collection or protection of any income and Proceeds from the Collateral, (B) preservation of rights against parties to the Collateral or against third persons, (C) ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or (D) informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters. Except as provided above, Lender shall have no liability for depreciation or deterioration of the Collateral.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default In Favor of Third Parties.** Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or ability to perform Grantor's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Insufficient Market Value of Securities.** The market value of the Collateral falls below $15,000,000.00; and as a result of the deterioration of the market value of the Collateral, Grantor does not, by the close of business on the next business day after Grantor has received notice from Lender of the deterioration, either (1) reduce the amount of the Indebtedness in this loan as required by Lender or (2) pledge or grant an additional security interest to increase the value of the Collateral as required by Lender.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Material Adverse Change.** A Material Adverse Change occurs in Grantor's financial condition, or in the value of any Collateral.

**Cure Provisions.** If any default, other than a default in payment or failure to satisfy Lender's requirement in the Insufficient Market Value of Securities section, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**ADDITIONAL REQUIREMENT.** The Collateral cannot be transferred from Mary Carole McDonnell to any person, including without limitation the Mary Carole McDonnell Trust.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Declare all Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Collect the Collateral.** Collect any of the Collateral and, at Lender's option and to the extent permitted by applicable law, retain possession of the Collateral while suing on the Indebtedness.

**Sell the Collateral.** Sell the Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales. Unless the Collateral is

# PLEDGE AGREEMENT
(Continued)



perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender shall give or mail to Grantor, and other persons as required by law, notice at least ten (10) days in advance of the time and place of any public sale, or of the time after which any private sale may be made. However, no notice need be provided to any person who, after an Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. Grantor agrees that any requirement of reasonable notice as to Grantor is satisfied if Lender mails notice by ordinary mail addressed to Grantor at the last address Grantor has given Lender in writing. If a public sale is held, there shall be sufficient compliance with all requirements of notice to the public by a single publication in any newspaper of general circulation in the county where the Collateral is located, setting forth the time and place of sale and a brief description of the property to be sold. Lender may be a purchaser at any public sale.

**Sell Securities.** Sell any securities included in the Collateral in a manner consistent with applicable federal and state securities laws. If, because of restrictions under such laws, Lender is unable, or believes Lender is unable, to sell the securities in an open market transaction, Grantor agrees that Lender will have no obligation to delay sale until the securities can be registered. Then Lender may make a private sale to one or more persons or to a restricted group of persons, even though such sale may result in a price that is less favorable than might be obtained in an open market transaction. Such a sale will be considered commercially reasonable. If any securities held as Collateral are "restricted securities" as defined in the Rules of the Securities and Exchange Commission (such as Regulation D or Rule 144) or the rules of state securities departments under state "Blue Sky" laws, or if Grantor or any other owner of the Collateral is an affiliate of the issuer of the securities, Grantor agrees that neither Grantor, nor any member of Grantor's family, nor any other person signing this Agreement will sell or dispose of any securities of such issuer without obtaining Lender's prior written consent.

**Rights and Remedies with Respect to Investment Property, Financial Assets and Related Collateral.** In addition to other rights and remedies granted under this Agreement and under applicable law, Lender may exercise any or all of the following rights and remedies: (1) register with any issuer or broker or other securities intermediary any of the Collateral consisting of investment property or financial assets (collectively herein, "investment property") in Lender's sole name or in the name of Lender's broker, agent or nominee; (2) cause any issuer, broker or other securities intermediary to deliver to Lender any of the Collateral consisting of securities, or investment property capable of being delivered; (3) enter into a control agreement or power of attorney with any issuer or securities intermediary with respect to any Collateral consisting of investment property, on such terms as Lender may deem appropriate, in its sole discretion, including without limitation, an agreement granting to Lender any of the rights provided hereunder without further notice to or consent by Grantor; (4) exercise any and all rights of Lender under any such control agreement or power of attorney; (5) exercise any voting, conversion, registration, purchase, option, or other rights with respect to any Collateral; (6) collect, with or without legal action, and issue receipts concerning any notes, checks, drafts, remittances or distributions that are paid or payable with respect to any Collateral consisting of investment property. Any control agreement entered with respect to any investment property shall contain the following provisions, at Lender's discretion. Lender shall be authorized to instruct the issuer, broker or other securities intermediary to take or to refrain from taking such actions with respect to the investment property as Lender may instruct, without further notice to or consent by Grantor. Such actions may include without limitation the issuance of entitlement orders, account instructions, general trading or buy or sell orders, transfer and redemption orders, and stop loss orders. Lender shall be further entitled to instruct the issuer, broker or securities intermediary to sell or to liquidate any investment property, or to pay the cash surrender or account termination value with respect to any and all investment property, and to deliver all such payments and liquidation proceeds to Lender. Any such control agreement shall contain such authorizations as are necessary to place Lender in "control" of such investment collateral, as contemplated under the provisions of the Uniform Commercial Code, and shall fully authorize Lender to issue "entitlement orders" concerning the transfer, redemption, liquidation or disposition of investment collateral, in conformance with the provisions of the Uniform Commercial Code.

**Foreclosure.** Maintain a judicial suit for foreclosure and sale of the Collateral.

**Transfer Title.** Effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Have and exercise any or all of the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, at law, in equity, or otherwise.

**Application of Proceeds.** Apply any cash which is part of the Collateral, or which is received from the collection or sale of the Collateral, to reimbursement of any expenses, including any costs for registration of securities, commissions incurred in connection with a sale, attorneys' fees and court costs, whether or not there is a lawsuit and including any fees on appeal, incurred by Lender in connection with the collection and sale of such Collateral and to the payment of the Indebtedness of Grantor to Lender, with any excess funds to be paid to Grantor as the interests of Grantor may appear. Grantor agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Collateral to the Indebtedness.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**COUNTERPART.** This agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same agreement.

**FACSIMILE OR ELECTRONIC MAIL DOCUMENTS INDEMNIFICATION.** In accepting delivery of this document by method of fax transmission or electronic mail, and by affixing your signature upon all or any portion of this document, you hereby consent and agree to the following: The undersigned hereby waives any right, claim, or the defense that the incompleteness of any documentation received by fax transmission or electronic mail (the "Faxed or Email Document"), in comparison to the originally transmitted document from which the fax or email was generated or issued (the "Original Document"), resulted in damages by way of such incomplete document; or would have caused the undersigned not to sign this document had the undersigned been aware of additional verbiage, terms or conditions that are contained in the Original Document from which the fax or email was issued (the "Purported Missing Terms"). By affixing your signature upon all or any portion of the Faxed or Emailed Document, the undersigned further agrees to be bound by the Purported Missing Terms as if they had appeared in the Faxed or Emailed Document. Should the undersigned have any reason to believe that Purported Missing Terms exist between the Original Document and the Faxed or Emailed Document, the undersigned shall immediately notify Lender of any such

# PLEDGE AGREEMENT
## (Continued)



Purported Missing Terms.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Grantor as provided in this Agreement.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** To the extent permitted by applicable law, all parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Judicial Reference.** To the extent the waiver of the right to a jury trial is not enforceable in any proceeding, the parties hereto agree that any claim shall be determined by a judicial reference proceeding in accordance with the provisions of California Code of Civil Procedure Sections 638 et seq. The parties intend this section on judicial reference to be specifically enforceable. Venue for the reference proceeding shall be in the County of Orange, California. Upon the written request of any party, the parties shall select a single referee, who shall be a retired California state or federal court judge or justice. If the parties do not agree upon a referee within 10 days of such written request, then any party shall have the right to request the court in Orange County, California to appoint a referee pursuant to California Code of Civil Procedure Section 640(b). The referee shall be appointed to sit with all of the powers provided by law. The parties shall not seek to appoint a referee that may be disqualified pursuant to California Code of Civil Procedure sections 641 or 641.2 without the prior written consent of all parties. Except as expressly set forth in this Agreement, the referee shall determine the manner in which the reference proceeding is conducted, including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to

# PLEDGE AGREEMENT
## (Continued)



the course of the reference proceeding. The referee may require one or more prehearing conferences. The parties hereto shall be entitled to discovery, and the referee shall oversee discovery in accordance with the rules of discovery, and shall enforce all discovery orders in the same manner as any trial court judge in proceedings at law in the State of California. The referee shall conduct the proceedings in accordance with California Code of Civil Procedure, the Rules of Court, and California Evidence Code, except as otherwise specifically agreed by the parties and approved by the referee, and the referee shall determine all issues in accordance with California substantive and procedural law. Each party acknowledges and agrees that the appointed referee shall have the power to decide all issues in the applicable action or proceeding, whether of fact or law. The referee shall be empowered to enter equitable as well as legal relief and rule on any motion which would be authorized in a trial, including motions to dismiss, motions for default judgment, or motions for summary judgment.

The referee shall report his or her decision, which report shall also include findings of fact and conclusions of law. The referee shall issue a decision, and pursuant to California Code of Civil Procedure Sections 644 and 645, the referee's decision shall be entered by any court of competent jurisdiction as a judgment in the same manner as if the action had been tried by the court. The final judgment or order from any appealable decision or order entered by the referee shall be fully appealable as if it has been entered by the court of competent jurisdiction. The parties recognize and agree that all claims resolved in a judicial reference proceeding pursuant hereto will be decided by a referee and not by a jury. This Agreement constitutes a "reference agreement" between the parties within the meaning of and for purposes of California Code of Civil Procedure Section 638. Notwithstanding the foregoing, Lender may, in its sole and absolute discretion, commence any action in any court having the proper jurisdiction for that action to enforce its rights and remedies under this Agreement and/or the Related Documents. The parties consent to the jurisdiction of the courts in Orange County, California, or at Lender's request, in any jurisdiction where any collateral for the loan is located. The parties irrevocably and unconditionally submit to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waive: (a) any objection the parties might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum. The parties agree and consent that Lender may serve legal papers on the other parties by registered or certified mail, which shall be sufficient to obtain jurisdiction.

Notwithstanding the appointment of the referee or pending the appointment of the referee, the Orange County superior court, or any court of competent jurisdiction, shall have the power to issue temporary, injunctive, or provisional remedies. Nothing herein shall be deemed to apply to or limit the right of Lender to (a) exercise self-help remedies such as, but not limited to, setoff or recoupment, (b) foreclose judicially or nonjudicially against any real or personal property or collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from any court of competent jurisdiction temporary, provisional or ancillary remedies (including, but not limited to, injunctive relief, writs of possession, prejudgment attachment, writs of attachment, garnishment, temporary restraining orders, preliminary injunctions, a protective order or the appointment of a receiver), and/or (d) pursue rights against a party in a third-party proceeding in any action brought against Lender (including actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any judicial reference proceeding. This Agreement does not limit the right of any party to exercise or oppose any of the rights and remedies described in clauses (a) through (d) and any such exercise or opposition does not waive the right of any party, including, but not limited to, the claimant in any such action, to require submission to judicial reference the underlying merits of the claim occasioning resort to such remedies pursuant to this Agreement. At any time upon Lender's request, the parties agree to submit to a judicial reference proceeding. For avoidance of doubt, if an action is commenced in a court and Lender requests for submission to a judicial reference proceeding on the merits of the claims subject to such action, the parties agree to solve such claims under the judicial reference proceeding pursuant to this Agreement.

No provision in the loan documents regarding submission to jurisdiction and/or venue in any court is intended or shall be construed to be in derogation of the provisions in any loan document for judicial reference of any claim. If a claim includes multiple causes of action, some of which are found not to be subject to this Agreement, the parties shall stay the proceedings of the causes of action or part or parts thereof not subject to this Agreement until all other claims subject to this Agreement or parts thereof are resolved in accordance with this Agreement. If there are claims by or against multiple parties, some of which are not subject to this Agreement, the parties shall sever the claims subject to this Agreement and resolve them in accordance with this Agreement. Any party to this Agreement may file an original counterpart or a copy of this section with any court as written evidence of the consent of the parties hereto to the waiver of their right to trial by jury and the agreements contained herein regarding the application of judicial reference in the event of the invalidity of such jury trial waiver.

All fees and costs incurred in relation to the judicial reference proceeding shall be paid in accordance with the section titled Attorneys' Fees; Expenses in the loan documents. The compensation of the referee shall not exceed the prevailing rate for like services.

Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Pledge Agreement, as this Pledge Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Pledge Agreement from time to time.

**Borrower.** The word "Borrower" means Mary Carole McDonnell and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

# PLEDGE AGREEMENT
## (Continued)



**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Mary Carole McDonnell.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Income and Proceeds.** The words "Income and Proceeds" mean all present and future income, proceeds, earnings, increases, and substitutions from or for the Collateral of every kind and nature, including without limitation all payments, interest, profits, distributions, benefits, rights, options, warrants, dividends, stock dividends, stock splits, stock rights, regulatory dividends, subscriptions, monies, claims for money due and to become due, proceeds of any insurance on the Collateral, shares of stock of different par value or no par value issued in substitution or exchange for shares included in the Collateral, and all other property Grantor is entitled to receive on account of such Collateral, including accounts, documents, instruments, chattel paper, investment property, and general intangibles.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Banc of California, National Association, its successors and assigns.

**Material Adverse Change.** "Material Adverse Change" means an event that would cause Grantor (i) to be rendered insolvent, or (ii) Grantor's financial condition or the value of the Collateral has changed, as determined by Lender in its reasonable discretion, such that Lender reasonably believes the prospect of payment or performance of the obligations under the Related Documents is impaired or would otherwise cause an Event of Default under the Related Documents.

**Note.** The word "Note" means the Note dated February 1, 2018 and executed by Mary Carole McDonnell in the principal amount of $15,000,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Obligor.** The word "Obligor" means without limitation any and all persons obligated to pay money or to perform some other act under the Collateral.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS PLEDGE AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED February 1, 2018.**

**GRANTOR:**

X ______________________________

Mary Carole McDonnell

[illegible] All Rights Reserved. [illegible]

# CONTROL AGREEMENT

# BANK ACCOUNT CONTROL AGREEMENT

**THIS BANK ACCOUNT CONTROL AGREEMENT** (the **"Agreement"**) is made and entered into as of January 31, 2018, by and among **NORTHERN TRUST SECURITES, INC.**, a Delaware corporation (**"Bank"**), **MARY CAROLE MCDONNELL**, individual (**"Debtor"**), and **BANC OF CALIFORNIA**, NATIONAL ASSOCIATION (**"Creditor"**).

## PREAMBLE

A. Bank has established a bank account, numbered [redacted] 7332 in the name of Debtor (the **"Account"**).

B. Debtor and Creditor have entered into a certain agreement whereby the Debtor has granted Creditor a security interest in the Account and all security entitlements of the Debtor with respect thereto, whether now owned or hereafter acquired, including those entries on the records of the Bank, and any and all renewals, substitutions, replacements and proceeds thereof and all income, interest and other distributions thereon maintained in the name of the Debtor (collectively, the **"Collateral"**). Bank is not a party to such agreement and, as to Bank, only terms set forth and/or defined in this Agreement apply.

C. Creditor, Debtor and Bank are entering into this Agreement to perfect the security interest of Creditor in the Collateral.

## TERMS

1. Account. The Bank represents and acknowledges: (a) the Collateral is in its possession, (b) the Debtor's interest in the Collateral as it appears on the Bank's books and records, and (c) that the Debtor agrees and acknowledges that Creditor shall be the sole secured holder of the Collateral as a "secured party" as that term is defined in Division 9 of the Uniform Commercial Code of the State of California ("UCC"). The Bank has not received notice from any other party claiming to have an interest in the Collateral. Except as set forth in paragraph 13 hereof, Bank has not and will not agree with any third party to comply with instructions or other directions concerning the Account or the disposition of funds in the Account originated by such third party without the prior written consent of Creditor and Debtor.

2. Subordination of Security Interest; Fees. Bank hereby subordinates to Creditor all security interests, encumbrances, claims and rights of setoff it may have, now or in the future, against the Account or any funds in the Account other than (i) in connection with the payment of Bank's customary fees and charges pursuant to its agreement with Debtor, as currently in effect and as modified by Bank from time to time, (ii) for the reversal of provisional credits, and (iii) as provided in paragraph 7.

3. Control of Account. Bank will comply with all instructions it receives from Creditor directing disposition, transfer or withdrawal of funds in the Account and/or any trade, change or liquidation of the portfolio in the Account without further consent of Debtor, including, but not limited to, transfer of funds in the Account to Creditor upon Creditor's notice to Bank that an event of default has occurred under Creditor's loan to Debtor, or guaranteed by Debtor, as determined by Creditor. Until Creditor terminates this Agreement in accordance with the terms herein, Debtor may not withdraw funds

and otherwise deal with the Account in any manner. Bank shall not honor any of Debtor's instructions with respect to the Account. Neither Debtor nor any other person or entity through or under Debtor shall have any control over the use of, or any right to withdraw any amount from, the Account, and Bank will comply only with instructions originated by Creditor directing disposition of funds in the Account without any consent of Debtor. As of the date of this Agreement, Bank will freeze the Account effective with the close of banking business on the date of this Agreement, but the Bank may honor all branch, ATM, point of sale, online and wire transfer activity that has been authorized or initiated prior to the time the freeze has been placed. As used in this Agreement, the term "Business Day" means any day other than a Saturday, Sunday or public holiday under the laws of the State of California. Debtor authorizes Barry K. Rothman ("Debtor's Attorney") as her representative to communicate with the Bank and Creditor on Debtor's behalf. Any communication made to Debtor's Attorney shall be deemed to have been made to Debtor. For avoidance of doubt, Debtor's Attorney does not represent Creditor.

4. Limitation of Liability of Bank. Bank shall have no responsibility or liability to Debtor for complying with instructions concerning the Account originated by Creditor, and shall have no responsibility to investigate the appropriateness of any such instruction, even if Debtor notifies Bank that Creditor is not legally entitled to originate any such instruction.

5. Customer Agreement. In the event of a conflict between this Agreement and any other agreement between Bank and Debtor, the terms of this Agreement will prevail.

6. Statements. Bank shall provide Creditor directly with duplicate copies of the regular monthly bank statements provided to Debtor with respect to the Account. Any applicable fees therefor shall be charged to the Debtor. Such monthly statements shall be received by Creditor within concurrently with Debtor's receipt thereof.

7. Uncollected Funds. Notwithstanding the fact that the Account will be completely blocked and no further deposits or withdrawals shall be made, if any receipts deposited in the Account are returned unpaid or otherwise dishonored, Bank shall have the right to charge any and all such returned or dishonored items against the Account or to demand reimbursement therefor directly from Debtor.

8. Exculpation of Bank; Indemnification by Debtor.

(a) Debtor agrees that Bank shall have no liability to Debtor them for any loss or damage that Debtor may claim to have suffered or incurred, either directly or indirectly, by reason of this Agreement or any transaction or service contemplated by the provisions hereof, except to the extent attributable to the negligence or misconduct of Bank. In no event shall Bank be liable for losses or delays resulting from labor difficulties or other causes beyond Bank's reasonable control. Bank's duties and obligations shall be determined solely by the provisions of this Agreement and customary trust company practices and Bank shall not be liable except for the performance of its duties and obligations as are set forth herein. Bank shall have no obligation to review or confirm that any actions taken pursuant to this Agreement comply with any other agreement or document. Substantial compliance by Bank with its standard procedures for the services Bank is providing hereunder shall be deemed to be exercise by it of ordinary care.

(b) Debtor shall indemnify and hold Bank harmless from any and all losses, claims, damages, liabilities, expenses and fees, including reasonable attorneys' fees, resulting from the execution of or performance under this Agreement and the delivery by Bank of all or any part of the funds in the Account to Creditor pursuant to this Agreement, unless such losses, claims, damages, liabilities, expenses or fees are primarily attributable to Bank's gross negligence or willful misconduct. This indemnification shall survive the termination of this Agreement.

9. Termination. This Agreement may be terminated by Debtor only upon delivery to Bank of a written notification thereof jointly executed by Debtor and Creditor. This Agreement may be terminated by Creditor at any time, with or without cause, upon delivery of written notice thereof to each other party. Upon receipt of such written notice by Bank, the obligations of Bank hereunder with respect to the operation and maintenance of the Account shall terminate, Creditor shall have no further right to originate instructions concerning the Account.

10. Notices. All notices, requests or communications given to Debtor, Creditor or Bank shall be given in writing (including by electronic mail) at the address specified below:

If to Debtor: Mary Carole McDonnell
[redacted]
La Canada, California [redacted]
Email: marycarole@bellument.com

If to Creditor: Banc of California
601 S. Figueroa Street, Suite 2800
Los Angeles, Ca 90017
Attn: Commercial Banking

If to Bank: The Northern Trust Company
201 S. Lake Ave. Suite 600
Pasadena, California 91101
Attention: Mel Clark, Wealth Manager
Telephone: (626) 583-5600

With copy of Bank communications to Debtor to: Law Offices of Barry K. Rothman
1901 Avenue of the Stars, Suite 370
Los Angeles, Ca 90067
Telephone Number: (310) 557-0062
Email: bkr@bkrlegal.com

Any party may change its address and /or telephone and fax numbers for notices hereunder by giving notice to each other party hereunder given in accordance with this paragraph 10. Each notice, request or other communication given under this paragraph 10 shall be effective (i) if given by email, when such email is transmitted to the email address, if any, specified in this paragraph 10 and confirmation of receipt by the sending party is obtained, (ii) if given by overnight courier, the next Business Day after such communication is deposited with the overnight courier for delivery, addressed as aforesaid, or (iii) if given by any other means, when delivered at the address specified in this paragraph 10.

11. Disclosure of Debtor Information or Activity. Bank shall disclose to Creditor all information concerning Debtor's activities or attempted activities in connection with the Account, as requested by Creditor in addition to the information specifically set forth herein regarding the provision of duplicate statements to Creditor.

12. Reliance. Bank may rely, and Bank shall be protected in acting, or refraining from acting, upon any notice (including but not limited to electronic mail of such notice) believed by Bank to be genuine and to have been given by the proper party or parties.

13. Right to Place Hold; Bankruptcy; Interpleader. If at any time: (a) Bank, in good faith, is in doubt as to the action it should take under this Agreement, (b) Debtor becomes subject to a voluntary or involuntary bankruptcy, reorganization, receivership or similar proceeding, or (c) Bank is served with legal process which it in good faith believes prohibits the disbursement of the funds deposited in the Account, then Bank shall have the right to (i) place a hold on the funds in the Account until such time as it receives an appropriate court order or other assurance satisfactory to it as to the disposition of the funds in the Account, or (ii) commence, at Debtor's expense, an interpleader action in any competent federal or state court located in the State of California, and otherwise to take no further action except in accordance with written instructions from Creditor or in accordance with the final order of a competent court, served on Bank. Bank shall promptly notify Creditor in writing upon occurrence of any events under subsections (a) to (c) of this paragraph 13 and shall reasonably cooperate with Creditor.

14. Miscellaneous.

(a) This Agreement may be amended only by a written instrument executed by Creditor, Bank and Debtor acting by their respective duly authorized representatives.

(b) This Agreement is the entire agreement among all of the parties hereto and supersedes all other prior agreements and understandings, both written and oral, with respect to the subject matter hereof.

(c) This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, but Debtor shall not be entitled to assign or delegate any of its rights or duties hereunder without first obtaining the express prior written consent of Creditor and Bank.

(d) This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

(e) This Agreement shall be governed by the laws of the State of California (without giving effect to its conflicts of law rules).

(f) Each of the parties hereto irrevocably waives any and all right it may have to a trial by jury in any action, proceeding or claim of any nature relating to this Agreement, any documents executed in connection with this Agreement or any transaction contemplated in any of such documents. Each of the parties hereto acknowledges that the foregoing waiver is knowing and voluntary.

*{Remainder of page intentionally left blank}*

IN WITNESS WHEREOF, each of the parties has executed and delivered this Agreement as of the day and year first above set forth.

BANK:

**NORTHERN TRUST SECURITIES, INC.**

By: Mel Clark [signature]
Mel Clark
Wealth Manager

**ACKNOWLEDGMENT**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

**State of California**
**County of** Los Angeles

On January 31, 2018, before me, Dion Noravian, Notary Public, personally appeared Mel Clark, a Wealth Manager of Northern Trust Securities, Inc., a Delaware corporation, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature/Seal: [signature]

**My commission expires** NOV 25, 2021

DION NORAVIAN
Notary Public – California
Los Angeles County
Commission # 2220095
My Comm. Expires Nov 25, 2021

IN WITNESS WHEREOF, each of the parties has executed and delivered this Agreement as of the day and year first above set forth.

CREDITOR:

**BANC OF CALIFORNIA**

By: Banc of California

By: ______________________
Name: Bryan Hamilton
Title: VP | RM

**Address:** 601 S. Figueroa Street, Suite 2800 Los Angeles, CA 90017

**ACKNOWLEDGMENT**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

see attached

**State of California**
**County of** Los Angeles

On ~~January~~ February 1, 2018, before me, Jennifer Im Nam, Notary Public, personally appeared ______________, a ______________ of Banc of California, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature/Seal: ______________________
My commission expires ______________________

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT** **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Los Angeles )

On February 1, 2016 before me, Jennifer Im Nam, Notary Public,
*Date* *Here Insert Name and Title of the Officer*

personally appeared Bryan Hamilton
*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

JENNIFER IM NAM
Commission # 2068038
Notary Public - California
Los Angeles County
My Comm. Expires May 12, 2016

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ____________
*Signature of Notary Public*

*Place Notary Seal Above*

***OPTIONAL***

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: ____________
Document Date: ____________ Number of Pages: ____________
Signer(s) Other Than Named Above: ____________

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: ____________
☐ Corporate Officer — Title(s): ____________
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ____________
Signer Is Representing: ____________

Signer's Name: ____________
☐ Corporate Officer — Title(s): ____________
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ____________
Signer Is Representing: ____________

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

IN WITNESS WHEREOF, each of the parties has executed and delivered this Agreement as of the day and year first above set forth.

DEBTOR:

**MARY CAROLE MCDONNELL**
An individual

By: ______________________
Mary Carole McDonnell

**Address:** [redacted]
La Canada CA [redacted]

**Email Address:** marycarolemcdonnell@gmail.com

**ACKNOWLEDGMENTS**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California**
**County of** Los Angeles

On January 31, 2018, before me, Dion Noravian, Notary Public, personally appeared Mary Carole McDonnell, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature/Seal: ______________________
My commission expires NOV 25, 2021

DION NORAVIAN
Notary Public – California
Los Angeles County
Commission # 2220095
My Comm. Expires Nov 25, 2021

This Bank Account Control Agreement among **MARY CAROLE MCDONNELL,** an individual, Banc of California, and Northern Trust Securities, Inc., a Delaware corporation, dated January 31, 2018, is hereby acknowledged and agreed to by:

**WITNESS:**

______________________________

______________________________
**MARY CAROLE MCDONNELL**
An individual

**Address:** [redacted]
La Canada CA [redacted]
**Email Address:** marycarolemcdonnell@gmail.com

**ACKNOWLEDGMENT**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

**State of California**
**County of** Los Angeles

On January 31, 2018, before me, Dion Noravian, Notary Public, personally appeared Mary Carole McDonnell, an individual, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature/Seal: ______________________________

My commission expires NOV 25, 2021

DION NORAVIAN
Notary Public – California
Los Angeles County
Commission # 2220095
My Comm. Expires Nov 25, 2021

# DISBURSEMENT REQUEST

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $15,000,000.00 | 02-01-2018 | 02-01-2019 | 30212 | | | 10369 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Mary Carole McDonnell
[redacted]
La Canada, CA [redacted]

**Lender:** Banc of California, National Association
Business Banking - Los Angeles Office
601 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017

**LOAN TYPE.** This is a Variable Rate Nondisclosable Revolving Line of Credit Loan to an Individual for $15,000,000.00 due on February 1, 2019.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☒ Personal, Family, or Household Purposes or Personal Investment.

☐ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: To consolidate debt and provide cash reserves.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $15,000,000.00 as follows:

| | | |
|---|---|---|
| **Amount paid to Borrower directly:** | | $675,000.00 |
| $675,000.00 Deposited to Account # [redacted] 7672 with Lender for Interest Reserve (to be disbursed in accordance with the "Note") | | |
| Undisbursed Funds: | $14,325,000.00 | |
| **Note Principal:** | | $15,000,000.00 |

**COUNTERPART.** This agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same agreement.

**FACSIMILE OR ELECTRONIC MAIL DOCUMENTS INDEMNIFICATION.** In accepting delivery of this document by method of fax transmission or electronic mail, and by affixing your signature upon all or any portion of this document, you hereby consent and agree to the following: The undersigned hereby waives any right, claim, or the defense that the incompleteness of any documentation received by fax transmission or electronic mail (the "Faxed or Email Document"), in comparison to the originally transmitted document from which the fax or email was generated or issued (the "Original Document"), resulted in damages by way of such incomplete document; or would have caused the undersigned not to sign this document had the undersigned been aware of additional verbiage, terms or conditions that are contained in the Original Document from which the fax or email was issued (the "Purported Missing Terms"). By affixing your signature upon all or any portion of the Faxed or Emailed Document, the undersigned further agrees to be bound by the Purported Missing Terms as if they had appeared in the Faxed or Emailed Document. Should the undersigned have any reason to believe that Purported Missing Terms exist between the Original Document and the Faxed or Emailed Document, the undersigned shall immediately notify Lender of any such Purported Missing Terms.

**DISBURSEMENT AMOUNT AND ESTIMATES.** The loan disbursement amount paid to Borrower and/or others on Borrower's behalf can be changed depending on the loan disbursement date without a separate consent from Borrower. Fees and charges are estimated as of the anticipated closing date of this transaction. Borrower understands that these charges may vary from the actual costs.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED FEBRUARY 1, 2018.

**BORROWER:**

x ______________________________
Mary Carole McDonnell

## CREDIT INSURANCE DISCLOSURE

VOLUNTARY CREDIT INSURANCE. CREDIT LIFE INSURANCE, CREDIT DISABILITY INSURANCE AND INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.

By signing below, Borrower acknowledges that Borrower is not obtaining credit insurance for this loan for one of the following reasons:

(A) Borrower is not eligible for credit insurance;
(B) Credit Insurance is not available from Lender; or
(C) If Borrower is eligible and credit insurance is available from Lender, Borrower does not want it.

Prior to signing this Credit Insurance Notice on February 1, 2018, Borrower read and understood all of the provisions of this Disclosure.

BORROWER:

x ____________________
Mary Carole McDonnell

LaserPro, Ver. 17.4.10.000 Copr. D+H USA Corporation 1997, 2018. All Rights Reserved. - CA c:\HFS\CFI\LPL\I20.FC TR-1075 PR-12